IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| C.M., J.H., R.H., S.C., C.M., L.W., J.V., and Proposed Class Members, | ) ) ) |
| Plaintiffs, | ) JURY DEMANDED ) |
| vs. | ) ) Case No.: 3:21-cv-00561 |
| WILLIAM B. LEE, in his official capacity as GOVERNOR of the State of Tennessee, and JEFF MCCORD, in his official capacity as COMMISSIONER of the TENNESSEE DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT, | ) ) Chief Judge Waverly Crenshaw ) Magistrate Judge Alistair Newbern ) ) ) ) ) ) |
| Defendants. | |

**(PROPOSED) SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, for their causes of action against Defendants William B. Lee, in his official capacity as Governor of the State of Tennessee, and Jeff McCord, in his official capacity as Commissioner of the Tennessee Department of Labor & Workforce Development, state:

**PRELIMINARY STATEMENT**

1. On March 18, 2020, President Donald Trump signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020, and codified as 15 U.S.C § 9001, *et seq.* The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic,

including for workers who are not ordinarily eligible for unemployment benefits. Pursuant to 15 U.S.C. § 9021(b), the United States Secretary of Labor "shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such employment with respect to which the individual is not entitled to any other unemployment compensation…"

2. The CARES Act enhanced the federal unemployment insurance ("UI") program. However, Governor Lee unlawfully ended Tennessee's participation in federal pandemic unemployment programs on July 3, 2021. This program has served as a lifeline for thousands of Tennesseans who remain affected by the pandemic. Plaintiffs have all been adversely affected by the termination of the programs, and therefore file this complaint for declaratory judgment and for injunctive relief.

## PARTIES

3. Plaintiffs are citizens and residents of the State of Tennessee who are eligible for one or more Pandemic Unemployment Benefits established by the CARES Act. As a result of the Defendants' unlawful termination of these benefits, Plaintiffs have each suffered and will continue to suffer, immediate and irreparable harm related to the loss of their federal UI benefits.

4. Plaintiff C.M. is a resident of Shelby County, Tennessee. C.M. was diagnosed with COVID-19 and thereafter was unable to perform her job. She was receiving FPUC (defined below) benefits prior to Defendants' unlawful termination of the program. Without benefits, C.M. is facing eviction and having her utilities cut off.

5. Plaintiffs J.H. and R.H. reside in Carter County, Tennessee. They remained in the workforce as long as they could until forced to avoid their jobs due to health concerns. They were receiving PUA benefits in the amount of $378.00 per week prior to the program's termination,

which they used to pay for food, housing, and transportation, as well as to provide for their 12-year-old son. J.H. was diagnosed with cancer prior to the pandemic, and the cancer has severely weakened his immune system. R.H. has battled rheumatoid arthritis for years, and the medication she takes for that puts her at high risk for infections. Because the federal benefits have been terminated, J.H. is being put in the position of having to return to the workforce at significant risk to his life as well as the possibility of bringing home an infection, likewise threatening his wife's. They have been rationing food and separating meals in order to feed their son.

6. Plaintiff S.C. is a resident of Anderson County, Tennessee. S.C. was receiving PEUC benefits, which she was using to pay for food and other monthly expenses. S.C. was laid off by her employer in January 2021 during the pandemic. S.C. has applied to over two hundred (200) jobs without receiving any response at all. S.C. is searching for an employer who can work with her child care schedule.

7. Plaintiff C.M. is a resident of Williamson County, Tennessee. C.M. has a Master's degree in Education. C.M. was receiving PEUC and FPUC benefits to pay for food and other monthly expenses. When the federal benefits were terminated, C.M.'s healthcare was also interrupted.

8. Plaintiff L.W. is a resident of Davidson County, Tennessee. L.W. was a graphic designer and bindery warehouse worker at a small family-owned printing company. When the pandemic struck, events were cancelled, and the company's present and future accounts withdrew their print orders. The company itself closed in December, 2020. Her previous job is no longer available. L.W. has sent over two hundred (200) resumes out with only a few replies, all of which were rejections. L.W. continues to search for jobs, but needs the benefits to help her pay her monthly bills.

9. Plaintiff J.V. is a resident of Knox County, Tennessee. J.V. lost his job as a shipping supervisor at a company that produced hand sanitizer disinfectant. Because of the termination of the benefits, J.V. faces losing his car and falling behind on other bills. J.V. has three children, and the children's mother is deceased. J.V. has been consistently applying for jobs, far exceeding the weekly requirements, but cannot find an employer who can work with his child care needs.

10. Plaintiffs, and the proposed class members, are members of an identifiable class of Tennessee citizens who have received Pandemic Unemployment Assistance ("PUA")[1], benefits under the UI program, Pandemic Emergency Unemployment Compensation ("PEUC"), which extended regular unemployment compensation benefits for workers who had exhausted UI benefits[2], or benefits under the Federal Pandemic Unemployment Compensation ("FPUC"), which increased the amount of UI benefits by $600.00 per week starting on March 27, 2020.[3]

11. Plaintiffs and all proposed class members are entitled to receive benefits under the PUA, PEUC and FPUC programs. Defendants' actions have effectively terminated Tennessee's participation in these programs, specifically depriving Plaintiffs and all class members of the benefits to which they are entitled.

## JURISDICTION AND VENUE

12. This is an action pursuant to 42 U.S.C. § 1983 seeking to redress the deprivation of Plaintiffs' rights by Defendants acting under color of law and a federal question is therefore presented.

---

[1] 15 U.S.C. § 9021.
[2] 15 U.S.C. § 9025.
[3] 15 U.S.C. § 9023. FPUC is also included in the "weekly benefit amount" under PUA and PEUC. 15 U.S.C. § 9021(d)(1); 15 U.S.C. § 9025(a)(4)(A).

13. Venue is proper in this Court because the acts or omissions of the Defendants substantially occurred in the Middle District.

## ALLEGATIONS OF FACT

*The Federal Unemployment Benefit Programs*

14. PUA, PEUC, and FPUC are funded by and conferred under 42 U.S.C. §§ 1101, 1104 and 1105.[4]

15. On December 26, 2020, the unemployment provisions in the CARES Act, including PUA and PEUC, were extended through March 14, 2021, by the Continued Assistance for Unemployed Workers Act of 2020 ("CAUWA"). Pub. L. No. 116-260, § 200-01, 206.

16. CAUWA reauthorized FPUC in the amount of $300.00 per week, payable from December 26, 2020 through March 14, 2021. Pub. L. No. 116-260, § 203.

17. On March 11, 2021, PUA, PEUC, and FPUC were extended through September 6, 2021, by the American Rescue Plan Act of 2021 ("ARPA"). Pub. L. No. 117-2, § 9011, 9013, 9016.

18. The CARES Act required the Secretary of the Department of Labor to provide PUA benefits, including FPUC, through agreements with the states. 15 U.S.C. § 9021(b). PEUC benefits, including FPUC, are also administered through agreements between the states and the federal government.

19. The costs of PUC benefits and the costs to states of administering these programs, including startup costs and ongoing administration costs, are 100% federally funded. 15 U.S.C. §§ 9021(f)(2), 20923(d)(1)(A), 9025(d)(2)(A).

---

[4] The PUA benefits, including FPUC and administration costs, are funded by 42 U.S.C. §§ 1104(a) and 1105(a). 15 U.S.C. § 9021(g). The PEUC benefits, including FPUC, are funded by 42 U.SC. §§ 1104(a) and 1105(a), while PEUC's administration costs are funded by 42 U.S.C. § 1101(a). 15 U.S.C. § 9025(d).

20. PUC benefits and administration costs are funded through Sections 901, 904, and 905 of the Social Security Act, 42 U.S.C. §§ 1101(a), 1104(a) and 1105(a). 15 U.S.C. §§ 9021(g), 9025(d).

21. The statutes for the federal Pandemic Unemployment benefits create a constitutionally protected property interest for Plaintiffs and members of the class.

22. The General Assembly requires the Defendants to secure all advantages available under the Social Security Act that relate to unemployment compensation. Specifically, Tenn. Code. Ann. § 50-7-705 states that the Commissioner of the Department of Labor and Workforce and Development "shall cooperate with the United States department of labor to the fullest extent consistent with this chapter, and shall take action, through the adoption of appropriate rules, regulations, administrative methods and standards, necessary to secure to this state and its citizens all advantages available under the Social Security Act, compiled in 42 U.S.C. § 301 et seq., that relate to unemployment compensation, the federal Unemployment Tax Act, compiled in 26 U.S.C. § 3301 et seq., the Wagner-Peyser Act, compiled in 29 U.S.C. § 49 et seq., and the Federal-State Extended Unemployment Compensation Act of 1970, found at 26 U.S.C. § 3304."

23. The Governor of Tennessee has been given no authority by the General Assembly to limit the State's unemployment compensation funds, to refuse to cooperate fully with the United States, or to terminate or refuse participation in these federal programs.

24. The Tennessee Department of Labor and Workforce Development entered into an agreement regarding PUA, PEUC and FPUC with the U.S. Department of Labor on behalf of the state of Tennessee, and began distributing benefits on April 14, 2020.

25. On May 11, 2021, Governor Lee announced his intention to end all federally funded pandemic unemployment compensation programs in Tennessee, effective July 3, 2021.

26. In a letter to the United States Department of Labor on May 11, 2021, Governor Lee notified the federal government that Tennessee would no longer participate in such federal programs. No authority to do this has been given to the Governor by the General Assembly.

27. Because of the termination of PUA, PEUC and FPUC benefits, Plaintiffs are facing extreme hardships, such as an inability to pay for basic living expenses such as housing, utilities, food, health care, and childcare. Plaintiffs and other unemployed Tennesseans face immediate and irreparable harm including eviction from their homes and repossession of their vehicles.

28. But for Governor Lee's attempt to terminate Tennessee's participation in these federal programs, Plaintiffs would continue to receive the benefits to which they are entitled.

29. The Defendants' attempt to terminate the PUC benefits is not irrevocable. In response to the numerous lawsuits being filed to return or maintain the federal benefits, on July 12, 2021, the United Stated Department of Labor ("DOL") issued guidance to state workforce agencies which clarified that "[a]ny state that has provided notice to [DOL] of its intent to terminate any of the Pandemic Unemployment Benefits prior to the September 6, 2021 end date may reinstitute participation in any or all programs it previously indicated it would be terminating."[5]

30. The DOL's guidance indicates that if the date on which a state has indicated it will terminate participation has passed, as it has in Tennessee, the state may need to enter into a new agreement with the DOL to reinstitute operations.

31. Every week that passes without an agreement between Tennessee and the Department of Labor to administer PUC benefits may result in the permanent loss of

---

[5] Unemployment Insurance Program Letter ("UIPL") No. 14-21, Change 1 (**Exhibit A** attached hereto and available at https://wdr.doleta.gov/directives/corr_doc.cfm?docn=9502)

approximately 800 million dollars in federal unemployment benefits for needy Tennesseans, including the Plaintiffs.

### *The Tennessee Unemployment Program*

32. Tennessee's unemployment insurance program is governed by Tenn. Code Ann. § 50-7-101 *et seq*.

33. Tenn. Code Ann. § 50-7-102(a)(1) states that "[e]conomic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state; therefore, involuntary unemployment is a subject of general interest and concern that requires action by the general assembly to prevent its spread and to lighten its burden that now so often falls with crushing force upon the unemployed worker and the worker's family."

34. Tenn. Cod Ann. § 50-7-102(a)(3) states: "The general assembly, therefore, declares that in its considered judgment the public good and general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

35. In Tenn. Code Ann. § 50-7-501(a)(1), Tennessee established a "special fund within the state treasury, an unemployment compensation fund, which shall be administered by the administrator of the division of employment security."

36. Tenn. Code Ann. § 50-7-501(a)(1) further indicates that the fund established "shall consist of all:… (F) Money credited to this state's account in the unemployment trust fund pursuant to § 903 of the Social Security Act, codified in 42 U.S.C. § 1103."

37. Tenn. Code Ann. § 50-7-501(a)(2) states that "[a]ll money in the fund shall be commingled and undivided."

38. Tenn. Code Ann. § 50-7-502(a)(4) states that the fund "shall consist of all money appropriated and allotted by this state, and all moneys received from the United States, or any agencies of the United States, or from any other source, for that purpose."

39. There is no question that the federal benefits available under the PUA, PEUC and FPUC remain available to the state of Tennessee, and that such benefits were only terminated due to Governor Lee's unilateral decision to end participation in the same.

40. By terminating Tennessee's participation in PUA, PEUC and FPUC benefits conferred under 42 U.S.C. §§ 1101, 1104 and 1105, Defendants have violated their obligations to Tennesseans to secure such benefits for Plaintiffs and other members of the class.

41. Plaintiffs and all class members are entitled to benefits under the PUA, PEUC and FPUC programs.

42. Defendants have terminated Tennessee's participation in these programs, which directly deprives Plaintiffs and all class members of these rights. And Plaintiffs were provided no opportunity to appeal.

## **CLASS ACTION**

43. Plaintiffs seek class certification against Defendants pursuant to Fed. R. Civ. P 23. By terminating Tennessee's participation in the federal programs set out above, Defendants have deprived thousands of Tennesseans of their benefits under those programs.

44. The class is defined as all Tennesseans who received benefits under PUA, PEUC or FPUC programs and who no longer receive those benefits as of July 4, 2021 as a consequence of the Governor's actions.

45. The number of persons whose rights have been deprived by Defendants are too numerous to join in this case.

46. The Plaintiff class members are readily identifiable using records maintained by the Tennessee Department of Labor and Workforce Development. Indeed, a notice of termination was required to have been sent to each class member.

47. The questions of law described in this Complaint and the deprivation of rights are common to all persons who received PUA, PEUC and FPUC programs. Specifically, the common question for all class members is whether Defendants have committed a deprivation of their rights under 42 U.S.C. § 1983 by terminating Tennessee's participation in these federal programs.

48. Plaintiffs' claims are typical of claims in this class, as their claims arise from the same termination of Tennessee's participation in the programs.

49. Plaintiffs will fairly and adequately protect the interests of the class. The named Plaintiffs do not have any interests antagonistic to the interests of the class as a whole.

50. In this Complaint, Plaintiffs, on behalf of the proposed class, seek a court order requiring Defendants to participate in the PUA, PEUC and FPUC programs.

51. The prosecution of separate claims would create a risk of inconsistent or varying adjudications with respect to the individual members of the proposed class and establish incompatible standards of conduct for Defendants.

52. Adjudications with respect to individual class members would as a practical matter be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

53. Defendants' actions in terminating Tennessee's participation in the federal relief programs affects the entire class, so that final injunctive and declaratory relief is appropriate for the class as a whole.

54. The questions of law or fact are common to all class members and predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I:  CLAIM FOR DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983

55. 42 U.S.C. § 1983 provides that any person who, acting under color of any statute, ordinance, regulation, custom, or usage of any state… causes any citizen of the United States to be deprived of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

56. Each of the Plaintiffs and class members had constitutionally-protected property interests in benefits under the CARES Act, 15 U.S.C. § 9001, *et seq* and state law.

57. Each of the Plaintiffs and class members is a "covered individual" within the meaning and categories in 15 U.S.C. § 9021(a)(3).

58. As indicated above, pursuant to 15 U.S.C. § 9021(b), the United States Secretary of Labor "shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such employment with respect to which the individual is not entitled to any other unemployment compensation…"

59. The State of Tennessee previously entered into agreements with the federal government to participate in federal benefits such as the PUA, PEUC and FPUC programs.

60. Plaintiffs began receiving benefits under the federal programs, and as "covered individuals," they were entitled to the same.

61. Plaintiffs remain entitled to the same benefits, and would be receiving them but for Defendants' unlawful interference to terminate Tennessee's participation in the programs.

62. Defendants, acting under color of law, ended Tennessee's participation in the federal programs, thus depriving Plaintiffs of their benefits under the CARES Act.

63. Defendants, by ending Tennessee's participation in the federal programs, reduced or eliminated the amount of funding that should have been paid into Tennessee's unemployment compensation fund as established by Tenn. Code Ann. § 50-7-501, and which would have been available to Plaintiffs.

64. Defendants gave notice to terminate Tennessee's participation in the federal programs as of July 3, 2021. Consequently, Plaintiffs have not received any of the federal benefits under the PUA, PEUC or the FPUC to which they are entitled since that date.

WHEREFORE, Plaintiffs pray:

1. That process issue, requiring Defendants to answer in the time prescribed by law;

2. That the Court determine, as soon as practicable, and consistent with the requirements in Fed. R. Civ. P. 23, that Plaintiffs' proposed class action be maintained and provide notice as appropriate pursuant to Fed. R. Civ. P. 23;

3. That the Court issue a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) prohibiting Defendants from continuing to deprive Plaintiffs and proposed class members of their benefits under the CARES Act and ordering the Defendants to enter into such agreement with the United States as may be necessary;

4. That the Court grant injunctive relief requiring Defendants to immediately notify the United States Department of Labor that Tennessee sets aside its purported termination of

federally funded pandemic unemployment compensation programs and make clear Tennessee's intent to participate fully in such programs moving forward;

5. That the Court upon final hearing find that Defendant Governor William Lee and Defendant Jeff McCord have deprived Plaintiffs and proposed class members of benefits to which they were entitled under the CARES Act pursuant to 42 U.S.C. § 1983;

6. That the Court order Defendants to reimburse Plaintiffs and proposed class members, from recovered federal funds, the benefits they should have received from July 4, 2021 until the date of the order;

7. That the Plaintiffs and proposed class members be awarded the costs of bringing this suit, including reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 23 (h), to include an award from the corpus of funds recovered subject to this rule and the common fund doctrine of the state of Tennessee, or other applicable law;

8. That the Plaintiffs and proposed class members be awarded their court costs and discretionary costs in this matter;

9. For such other general relief to which the Plaintiffs and members of the proposed class are entitled.

Respectfully submitted,

THE BLACKBURN FIRM, PLLC

/s/ W. Gary Blackburn
W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 5th Ave. North, Suite 300
Nashville, TN 37219
Telephone: (615) 254-7770
Email: wgaryblackburn@wgaryblackburn.com

**Certificate of Service**

The undersigned hereby certifies that on this the 18th day of August, 2021 a true and correct copy of the foregoing has been forwarded via the Court's electronic filing system to:

Dianna Baker Shew, BPR # 12793
Senior Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
dianna.shew@ag.tn.gov

                                            */s/ W. Gary Blackburn*
                                            W. Gary Blackburn