UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAROLYN MOSS, JASON HUBBARD, REBECCA HUBBARD, STACY COLEMAN, CAROLYN MCKEOWN, LAURA WILKINS, JOE VASBY, and PROPOSED CLASS MEMBERS, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:21-cv-00561 ) |
| WILLIAM B. LEE, in his official capacity as GOVERNOR of the State of Tennessee, JEFF MCCORD, in his official capacity as COMMISSIONER of the TENNESSEE DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT, and MARTIN J. WALSH, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Carolyn Moss, Jason Hubbard, Rebecca Hubbard, Stacy Coleman, Carolyn McKeown, Laura Wilkins, and Joe Vasby (collectively, "Plaintiffs") are Tennessee residents who received federal supplemental unemployment benefits through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") due to hardship caused by the COVID-19 pandemic. Plaintiffs brought this action individually, and on behalf of a putative class, against Tennessee Governor Bill Lee and Commissioner of the Tennessee Department of Labor & Workforce Development Jeff McCord, (the "State Defendants"), and United States Secretary of Labor Martin Walsh. Plaintiffs claim that the State Defendants improperly terminated distribution of federal benefits, in violation of 42 U.S.C. § 1983. Before the Court is the State Defendants' Motion to Dismiss Plaintiffs' Third

Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Doc. No. 49), which has been fully briefed by the parties. (Doc. Nos. 51, 57, 58). Also pending before the Court is Secretary Walsh's unopposed Motion to Dismiss. (Doc. No. 62). For the following reasons, both motions will be granted.

I.  **FACTUAL ALLEGATIONS**[1]

Plaintiffs are a microcosm of the countless citizens who have suffered during the COVID-19 pandemic in Tennessee. In periods when the virus rages, those who become sick and cannot work, like Carolyn Moss, are faced with the prospect of living without a paycheck. (Doc. No. 43, Third Am. Compl. ¶ 3). Others, like Jason and Rebecca Hubbard, are immunosuppressed, vulnerable to severe COVID-19 illness, and made the difficult decision to leave the workforce to protect themselves. (Id. ¶ 5). Still others, including Stacy Coleman, Laura Wilkins, and Joe Vasby, lost their jobs when their employers or businesses, facing unprecedented economic uncertainty, were forced to furlough employees or shut down operations. Without work, many found it difficult to pay for basic living expenses, such as housing, food, and childcare. (Id. ¶¶ 3–11, 27). Some, such as Carolyn McKeown, even had their healthcare interrupted. (Id. ¶ 7).

To help alleviate the hardships suffered by Plaintiffs and those across both Tennessee and the country, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") (Id. ¶ 1). The CARES Act created temporary federal unemployment benefits to supplement state benefit programs. (Id. ¶ 10). These programs, which expired on September 6, 2021, included: (1) Pandemic Unemployment Assistance ("PUA"), which expanded unemployment benefits for up to 39 weeks; Pandemic Emergency Unemployment Assistance Compensation ("PEUC"),

---

[1] The Court relies on the allegations in the Third Amended Complaint (Doc. No. 43) ("Third Am. Compl."), which are accepted as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

which expanded unemployment benefits to those who had already exhausted available state benefits; or Federal Pandemic Unemployment Compensation ("FPUC"), which provided an additional $600 weekly to individuals already receiving unemployment benefits. (Id. ¶¶ 10, 14). On March 11, 2021, Congress extended these programs until September 6, 2021. (Id. ¶¶ 17, 19; see also Doc. No. 43-2 at 1). Plaintiffs each sought and received benefits through these programs. (Third Am. Compl. ¶¶ 3, 10, 49–60).

In order to distribute the CARES Act's supplemental federal benefits, states such as Tennessee entered into agreements with the federal government. On April 14, 2020, the Tennessee Department of Labor and Workforce Development entered into an agreement with the U.S. Department of Labor to distribute benefits under the PUA, PEUC, and FPUC programs. (Id. ¶ 24). However, the Act also allowed states to discretionarily "end participation in some or all of these programs earlier than" the September 6, 2021 expiration date by providing "30-days written notice." (Doc. 43-2 at 1); see also 15 U.S.C. § 9023. On May 11, 2021, Tennessee Governor Bill Lee announced his intention to discretionarily end all federally funded pandemic unemployment compensation programs in Tennessee, including the PUA, PEUC, and FPUC programs, effective July 3, 2021. (Third Am. Compl. ¶¶ 2, 11, 25–26).

Plaintiffs allege Governor Lee had no authority to end participation in the CARES Act benefit programs, and that doing so deprived them of a property interest. (Id. ¶ 2, 11). They brought the instant action seeking declaratory and injunctive relief for reinstatement of these benefit programs. (Id. ¶ 2).

## II.     MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)

### A. Legal Standard

Courts must consider any arguments under Rule 12(b)(1) first, "since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." Houchens v. Beshear, 850

3

F. App'x 340, 342 (6th Cir. 2021) (citations omitted); see also Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citations omitted). "'Under a factual attack, . . . the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction'" McCormick v. Miami Univ., 693 F.3d 654, 658 (6th Cir. 2012) (quoting Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 440 (6th Cir. 2012)).

B. Analysis

The State Defendants argue that the Court lacks subject matter jurisdiction because Plaintiffs' claims: (1) are moot; and (2) are otherwise barred by the Eleventh Amendment.

1. Mootness

A motion to dismiss for mootness is generally considered a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See KNC Invs., LLC v. Lane's End Stallions, Inc., 579 F. App'x 381, 383–84 (6th Cir. 2014). "The heavy burden of demonstrating mootness rests on the party claiming mootness." Cleveland Branch, NAACP v. City of Parma, OH, 263 F.3d 513, 531 (6th Cir. 2001). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013). "Parties lack a legally cognizable interest in a case's outcome when 'events . . . make it impossible for the court to grant any effectual relief whatever to a prevailing party.'" Mokdad v. Sessions, 876 F.3d 167, 169 (6th Cir. 2017) (quoting Fialka-Feldman v. Oakland Univ. Bd. of Trs., 639 F.3d 711, 713 (6th Cir. 2011)). Put another way, a case is moot if "(1) there is no reasonable expectation that the alleged violation will recur, and (2)

4

interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Los Angeles Cty. v. Davis, 440 U.S. 625, 625 (1979).

The State Defendants argue that because the temporary federal unemployment benefit programs at issue ended, Plaintiffs' claims are moot and they "can no longer claim that they are entitled to benefits that no longer exist." (Doc. No. 51 at 13–14). Here, the programs ended either when: (1) Governor Lee terminated the program on July 3, 2021, (Third Am. Compl. ¶¶ 2, 11, 25–26; see also Doc. No. 43-1), or (2) when the programs expired on September 6, 2021. (Third Am. Compl. ¶¶ 17, 19); see also 15 U.S.C. § 9023. Plaintiffs do not point to anything that extends the benefits beyond either of these dates. Plaintiffs counter, however, that their claims are not moot because the CARES Act "merely requires that the [benefits] 'may not be paid for any weeks of unemployment ending after'" the date of termination or expiration. (Doc. No. 57 at 18 (citing Doc. No. 57-3, Attachment II to UIPL No. 16-20, Change 6 p. 26)). Under the Act, Plaintiffs argue, Tennessee was "still required to accept submissions of new [federal unemployment benefit] applications" for unemployment claims prior to either July 3, 2021 or September 6, 2021. (Id. at 19).

The Court agrees with Plaintiffs that this case is not moot. Under the CARES Act, Tennessee must "process and pay benefits under the PUA program for all weeks of unemployment ending on or before the date of termination, and comply with all responsibilities with respect to claims filed under these programs for those weeks," including "taking new applications for PUA for 30 days after the date of" termination or expiration. (Doc. No. 57-3 at 8–9, 11–12). The state must also take new applications after termination for PEUC and MEUC claims as provided by state law and backdate them. (See Doc. No. 43-2 at 4–5). Here, Plaintiffs allege that they were eligible for, and receiving, PUA, PEUC, and MEUC benefits. (See Third Am. Compl. ¶¶ 3–11).

5

Plaintiffs maintain that Tennessee illegally terminated their right to federal benefits, and they seek reimbursement for "recovered federal funds, the benefits they should have received from July 4, 2021 until" the date of any order by the Court. (Id. at 15 ¶ 7). Thus, Plaintiffs believe they were allegedly eligible for benefits between July 4, 2021 and at least the September 6, 2021 expiration date. Accordingly, even though the programs have ended, Plaintiffs have a "legally cognizable interest in [the] case's outcome" and the Court would, if Plaintiffs succeed, be able to grant "effectual relief . . . to [them as] a prevailing party" for benefits owed until the expiration date. Mokdad, 876 F.3d at 169 (citing Fialka-Feldman, 639 F.3d at 713). This case is therefore not moot.

    2. *Eleventh Amendment Immunity*

The State Defendants argue that the Court lacks subject matter jurisdiction because Plaintiffs are barred from bringing claims against them under the Eleventh Amendment to the United States Constitution. Under the Eleventh Amendment, a state's own citizens cannot ordinarily bring an action in federal court against a state or its agencies. See U.S. Const. Amend. XI; see also Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). This is because the Eleventh Amendment "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." Russell, 784 F.3d at 1046 (citation omitted). Here, "the State has not waived its immunity to this suit or generally to suits under § 1983," Durham v. Martin, 388 F. Supp. 3d 919, 935 (M.D. Tenn. 2019) (citing Berndt v. Tenn., 796 F.2d 879, 881 (6th Cir. 1986)). "[N]or has Congress abrogated the State's immunity." Id. (citing Quern v. Jordan, 440 U.S. 332, 345 (1979)).

There is, however, an additional exception to the Eleventh Amendment: the doctrine announced in Ex parte Young, 209 U.S. 123 (1908). In order to qualify as an exception under that

doctrine, "a claim must seek prospective relief to end a continuing violation of federal law." Durham, 388 F. Supp. 3d at 935 (citing Diaz v. Mich. Dep't of Corr., 703 F.3d 956, 964 (6th Cir. 2013)). Conversely, "*all* retroactive relief," rather than just "retroactive monetary relief," is barred by the Eleventh Amendment. S&M Brands, Inc. v. Cooper, 527 F.3d 500, 509 (6th Cir. 2008) (emphasis supplied) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 103 (1984)).

Here, Plaintiffs argue that the Ex parte Young exception applies because the funds for the challenged federal benefits have not been received by the state in the first place due to Governor Lee's decision to terminate. (Doc. No. 57 at 15). Plaintiffs further argue that because Commissioner McCord is required to obtain federal benefits for Tennesseans, now and into the future, the funds remain "available for distribution," and therefore the requested relief is prospective. (Id. at 16, 19; see also Third Am. Compl. at 14 ¶ 4). The State Defendants counter that the Ex parte Young exception does not apply because the benefits programs at issue expired on September 6, 2021 and Plaintiffs' requested relief is therefore entirely retroactive. (Doc. No. 51 at 11).

The Court agrees with the State Defendants. Although it is true that federal district courts "may enjoin state officials to conform their future conduct to the requirements of federal law," Quern, 440 U.S. at 337 (citations omitted), Eleventh Amendment immunity applies where, as here, the requested relief is due to a one-time past act and there is no ongoing violation. S&M Brands, Inc., 527 F.3d at 509–10; see also Diaz, 703 F.3d at 964. In S&M Brands, although plaintiffs argued they sought prospective injunctive relief for benefits, the Sixth Circuit found that the relief sought was actually retroactive because it was based on a "one-time act that occurred in the past" by the Tennessee Attorney General. Id. at 509. The Sixth Circuit further reasoned that "Plaintiffs' claim of retroactive application is unlikely to recur in the future." Id.

7

Here, Plaintiffs effectively concede that the requested relief is due to a one-time past act: Governor Lee's decision to terminate benefits effective July 3, 2021. (Doc. No. 57 at 15; see also Third Am. Compl. ¶¶ 2, 11, 25–26). Plaintiffs' claim is neither likely to recur nor an ongoing violation because the programs at issue expired on September 6, 2021. (Third. Am. Compl. ¶¶ 17, 19; see also Doc. No. 43-2 at 1). Indeed, for Plaintiffs' claims to recur, Congress would have to reinstate CARES Act benefits and Tennessee would have to reinstate its agreement to distribute unemployment benefits under the program. See S&M, 527 F.3d at 509. Such a factual scenario does not exist. Although some of Plaintiffs' claims are styled as requesting forward-looking injunctive relief, the core of their request entails nothing more than retroactive monetary reimbursement. See Ernst v. Rising, 427 F.3d 351, 367–68 (6th Cir. 2005); (see also Third Am. Compl. at 14 ¶¶ 1–10). Thus, there is simply no ongoing violation, nor is there a "constitutional defect that will be remedied by compliance with an order of the court other than the failure to make a one-time payment of money." S&M, 527 F.3d at 510–11; Diaz, 703 F.3d at 964.

Accordingly, because Plaintiffs are citizens suing their own State, and "given the retroactive nature of the Plaintiffs' . . . claim and requested relief . . . Plaintiffs' claim is barred in federal court by sovereign immunity." S&M, 527 F.3d at 513.

### III. MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Having already found subject-matter jurisdiction lacking, the Court need not address Plaintiffs' merits arguments under Rule 12(b)(6). See Bell, 327 U.S. at 682. However, the Court nonetheless finds that even were jurisdiction to exist, Plaintiffs' merits arguments fail.

   A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether

8

the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). But "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

B.  Analysis

The State Defendants argue that Plaintiffs fail to plausibly state a claim under § 1983 because they do not allege a deprivation of any constitutional right or violation of federal law. (Doc. No. 51 at 3, 5–6, 9, 12). Section 1983 provides that "an individual may bring a private cause of action against anyone who, acting under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted). "To state a claim under . . . § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). "The first step in any such claim

is to identify the specific constitutional right [or federal law] allegedly infringed." Albright v. Oliver, 510 U.S. 266, 273 (1994) (citation omitted).

Here, Plaintiffs have failed to allege a violation of a constitutional right. Plaintiffs do not allege a single violation of the U.S. Constitution in the Third Amended Complaint (or for that matter, the Complaint, Amended Complaint, or Second Amended Complaint). (See Doc Nos. 1, 24, 30, 43). Rather, Plaintiffs make nothing more than hollow references to "constitutionally-protected property interests in benefits under the CARES Act," and that the State Defendants, "acting under color of law, ended Tennessee's participation in the federal programs." (Third Am. Compl. ¶¶ 62, 68). These allegations are nothing "more than an unadorned the-defendant-unlawfully-harmed-me-accusation" with mere "labels and conclusions" under Rule 12(b)(6). See Ashcroft, 556 U.S. at 678. Such allegations, even when accepted as true and viewed in the light most favorable to Plaintiffs, are woefully insufficient to establish a Section 1983 claim. See Lambert v. Davidson Cty. District Attorney, No. 3:19-cv-00893, 2020 WL 7624005, at *4–5 (M.D. Tenn. Dec. 22, 2020).

Plaintiffs have also failed to allege a violation of a federal law. Although Plaintiffs point to rights afforded to them under the CARES Act, such claims are without merit. Courts around the country, including those within the Sixth Circuit, have concluded that the CARES Act does not create either an explicit or implied private cause of action. See Autumn Court Operating Co. LLC v. Healthcare Ventures of Ohio, No. 2:20-cv-4901, 2021 WL 325887, at *5 (S.D. Ohio Feb. 1, 2021); see also Mescall v. United States Department of Justice, No. 2:20-CV-13364, 2021 WL 199277, at *2 (E.D. Mich. Jan. 19, 2021); Johnson v. JPMorgan Chase Bank, N.A., 488 F. Supp. 3d 144, 155 (S.D.N.Y. 2020).

10

Case 3:21-cv-00561   Document 70   Filed 01/06/22   Page 10 of 14 PageID #: 606

Plaintiffs attempt to sidestep their pleading infirmities by countering that their claims are actually grounded in the Due Process Clause of the Fifth and Fourteenth Amendments, despite the fact that, as discussed above, the Third Amended Complaint fails to specifically reference that, or any other, clause of the Constitution. (Doc. No. 57 at 1). Plaintiffs nonetheless argue that the Due Process Clause affords them property interests in the federal benefits that Governor Lee terminated. (Id.; see also Third Am. Compl. ¶¶ 11, 21, 23, 62). But, as already discussed, Plaintiffs fail to allege a constitutional violation sufficient to make out a Section 1983 claim. See Sigley, 437 F.3d at 533 (citing West, 487 U.S. at 48).

Moreover, even were Plaintiffs' unpled Fifth and Fourteenth Amendment claims considered by the Court, Plaintiffs have no property right to CARES Act benefits. "To determine whether a due process violation has occurred, the court must first decide whether plaintiffs had a property right that entitled them to procedural protections." Hughlett v. Romer-Sensky, 497 F.3d 557, 566–67 (6th Cir. 2006). "To have a property interest in a benefit, a person clearly must have "a legitimate claim of entitlement to it" rather than either "an abstract need or desire for it," or "a unilateral expectation" of it. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). "Whether a property interest exists is not determined by reference to the Constitution; rather, property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Ludwig v. Bd. of Trustees of Ferris State Univ., 123 F.3d 404, 409 (6th Cir. 1997) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Plaintiffs must therefore "point to some statutory or contractual right conferred by the state which supports a legitimate claim by Plaintiffs" to the CARES Act

11

benefits. Latimer v. Robinson, 338 F. Supp. 2d 841, 846 (M.D. Tenn. 2004) (citing Bailey v. Floyd Co. Bd. of Educ., 106 F.3d 135, 141 (6th Cir. 1997)).

Here, Plaintiffs argue that the State Defendants, "by ending Tennessee's participation in the federal programs, reduced or eliminated the amount of funding that should have been paid into Tennessee's unemployment compensation fund as established by Tenn. Code Ann. § 50-7-501, and which would have been available to Plaintiffs entitled thereto." (Third Am. Compl. ¶ 69). Contrary to Plaintiffs' arguments, however, Tenn. Code Ann. § 50-7-501 does not create a property interest in the *federal* supplemental benefits created by the CARES Act. See 15 U.S.C. § 9023. Plaintiffs point to no state statute, rule, or provision that creates their right to federal supplemental benefits. See Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp., 709 F.3d 584, 594 (6th Cir. 2013) (finding that a statute only creates a "protected property interest when it both confers [a] benefit and limits the discretion of the [government] to rescind the benefit."). Instead, as Plaintiffs admit, the CARES Act created *temporary* federal benefits to *supplement* state benefit programs. (Id. ¶ 10) (emphasis added). These supplements included: Pandemic Unemployment Assistance ("PUA"), which expanded limited unemployment benefits for up to 39 weeks; Pandemic Emergency Unemployment Assistance Compensation ("PEUC"), which expanded unemployment benefits to those who had already exhausted available state benefits; or Federal Pandemic Unemployment Compensation ("FPUC"), which provided an additional $600 weekly to individuals already receiving unemployment benefits. (Id. ¶¶ 10, 14).

That the CARES Act's supplemental programs enhanced state benefits does not mean the CARES Act created state property rights in those benefits for two reasons. First, as already discussed above, there is no private right of action under the CARES Act for temporary supplemental federal benefits. See Johnson, 488 F. Supp. at 155; Autumn, 2021 WL 325887, at

12

*5; Mescall, 2021 WL 199277, at *2. Second, federal law specifically allows states to exercise discretion in ending their distribution of the federal supplemental benefits. See 15 U.S.C. § 9023 ("Any state which is a party to an agreement . . . may, upon providing 30 days' written notice to the Secretary, terminate such an agreement."). Such discretion is enough to place the benefit outside the scope of a property interest. Here, the CARES Act not only fails to limit discretion, but it also specifically grants the state sole discretion to terminate the federal supplemental benefits. (Doc. 43-2 at 1); see also 15 U.S.C. § 9023. "The existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that recipients of such benefits have no entitlement to them." Latimer, 338 F. Supp. 2d at 847.

It is worthy to note that the Court is not aware of any case that has found a property interest in CARES Act benefits after the state terminated its participation. In fact, the only court to have weighed in directly on the issue has found no such property interest exists. See Dickerson v. Texas, No. H-21-2729, 2021 WL 4192740, at *2–3 (S.D. Tex. Sept. 15, 2021). In Dickerson, the Governor of Texas sent a termination letter notifying the Department of Labor that the state "no longer desired to participate in the federal unemployment programs" of the CARES Act. Id. at *1. Plaintiffs in that case made an identical argument to the one in the instant case, arguing that they were denied a property interest in the terminated benefits, in violation of § 1983. See id. But the district court rejected plaintiffs' argument and granted the state defendants' motion to dismiss "because the . . . benefits could be discretionarily removed [by the governor], they are not protected nor are they entitlements." Id. at *3. The Dickerson Court also noted that the "state's baseline unemployment benefits," the only benefits to which plaintiffs were entitled, "remain intact." Id. The same is true here. Governor Lee exercised his discretion to terminate the state's agreement

13

Case 3:21-cv-00561    Document 70    Filed 01/06/22    Page 13 of 14 PageID #: 609

under the CARES Act, (Doc. No. 43-1), and no state benefits were impacted. See Tenn. Code Ann. § 50-7-101 *et seq.*

Accordingly, Plaintiffs have failed to state a claim under either 42 U.S.C. § 1983 or the Due Process Clause. The Court will therefore dismiss Plaintiffs' sole claim against the State Defendants.[2]

## IV. MOTION TO DISMISS BY SECRETARY WALSH

Also pending before the Court is a Motion to Dismiss by United States Secretary of Labor Martin Walsh. (Doc. No. 62). Because Plaintiffs have failed to timely oppose the motion, the Court will deem it unopposed and conclude, after independent review, that the motion is well-taken. See M.D. Tenn. L.R. 7.01(3).

## V. CONCLUSION

The Court appreciates the hardship suffered by countless Tennesseans, including Plaintiffs, as the COVID-19 pandemic continues to rage and wreak havoc upon daily life. Unfortunately for Plaintiffs, however, they offer no legal path for the relief they desire. For the foregoing reasons, the State Defendants' and Secretary Walsh's Motions to Dismiss (Doc. Nos. 49, 62) will be granted, and Plaintiffs' sole claim against Defendants, along with this case, will be dismissed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs have also moved for leave to file a Fourth Amended Complaint, to which Defendants have responded. (Doc. Nos. 67, 68, 69). However, for the reasons already discussed in this opinion, Plaintiff's proposed amendments are futile because: (1) they fail to remedy the Eleventh Amendment jurisdictional issue; and (2) nonetheless fail to state a viable claim under § 1983.